191 N.J. Super. 578 (1983)
468 A.2d 715
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ONE 1979 PONTIAC SUNBIRD, BERNARD J. MASSARI, AND DAVID MASSARI, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1983.
Decided November 14, 1983.
*580 Before Judges ANTELL, JOELSON and McELROY.
Dorothy L. Wright argued the cause for appellants (Jeffrey Fogel of counsel; Dorothy L. Wright on the brief).
Kathleen Holly argued the cause for respondent (Nicholas L. Bissel, Jr., Prosecutor of Somerset County, attorney; H. Edward Gabler on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
In this forfeiture proceeding under N.J.S.A. 2C:64-3 defendant Bernard J. Massari (hereinafter "defendant") appeals from an order for summary judgment which extinguished his interest in, and ordered the forfeiture of, his automobile. The basis for the order under review is the allegation that the car was used by the owner's son, David Massari, to commit three robberies on *581 July 5, 1982 with two women companions. David Massari was acquitted of the crimes by reason of insanity and we are uninformed as to the outcome of any criminal proceedings which may have been brought against his coparticipants.
Defendant contends on this appeal that he was denied due process because the forfeiture statute does not exempt from its compass property whose owners are nonculpable in the sense that they had no prior knowledge of the wrongful use to which their property was put. The State's position is presented in a brief containing an argument of less than one-half page consisting in its entirety of the following:
The Appellate Division has determined that N.J.S.A. 2C:64-1 et seq. is Constitutional when applied to the innocent owners of automobiles used to facilitate crime. State v. One (1971) Datsun, A-3358-81T4 (App.Div. 1983).
The Datsun case was not approved for publication until May 25, 1983 and the prosecutor's brief was filed more than a week earlier. R. 1:36-3 specifically states that "[n]o unpublished opinion shall constitute precedent or be binding upon any court." However, it has since been approved for publication and appears at 189 N.J. Super. 209 (App.Div. 1983).
For reasons to be explained we distinguish the constitutional question considered in Datsun from that herein presented. But that decision is relevant in another respect so as to mandate a reversal and remand for further proceedings although not noted by either the State or defendant. As in Datsun, the record before us is plainly insufficient to meet the statutory requirement that the property be used to further an unlawful purpose. The complaint asserts that after his arrest David Massari admitted the crimes and the use of his father's car. The papers in support of the State's motion for summary judgment consist of a brief to which were annexed copies of David Massari's unsworn written statement to the police together with the unsworn statements of his accomplices. Disregarding for present purposes problems arising from the hearsay character of the evidence relied on, the information submitted to the court was verified by a detective, who identifies himself as "one of the *582 investigating officers," only "to the best of my knowledge, information and belief." Bernard Massari's unverified answer denies the material allegations of the complaint, asserts his lack of prior knowledge that his car would be used for an unlawful purpose and asserts the unconstitutionality of the statute. These circumstances match those considered in Datsun and it was there decided that the State's factual allegations, verified only on information and belief, were inadequate. It was held that the State would have to prove its claim in a plenary hearing and the matter was remanded accordingly.
Because this matter must therefore now be fully reconsidered and because our view of the legal and constitutional context within which the forfeiture statute should be considered differs from that expressed by the trial judge in his letter opinion of December 23, 1982, we will discuss, for the guidance of the trial judge and the parties, the principles which must govern further proceedings on the remand.
The forfeiture statute, N.J.S.A. 2C:64-1 et seq. was enacted as part of the New Jersey Code of Criminal Justice by L. 1978, c. 95, effective September 1, 1979. It was thereafter amended on January 23, 1980 and September 24, 1981. Until the 1981 amendment, N.J.S.A. 2C:64-1 in pertinent part provided:
a. The defendant's interest [emphasis supplied] in the following shall be subject to forfeiture and no property rights shall exist in them:
(1) Controlled dangerous substances, firearms which are unlawfully possessed, carried, acquired or used, illegally possessed gambling devices and untaxed cigarettes. These shall be designated prima facie contraband.
(2) All property which has been, or is intended to be, utilized in furtherance of an unlawful activity, including, but not limited to, conveyances intended to facilitate the perpetration of illegal acts, or buildings or premises maintained for the purpose of committing offenses against the State.
........
N.J.S.A. 2C:64-5 provided:
No property subject to seizure under this chapter shall be forfeited unless it shall appear that the owner of the property or his agent was a consenting party or privy to its unlawful possession, use or sale, nor shall any forfeiture under this chapter affect the rights of any person holding an interest in property subject to seizure under this chapter unless it shall appear that such person had knowledge *583 of or consented to any act or omission upon which the right of forfeiture is based. [Emphasis supplied].
In 1981 both sections were amended to their present form. N.J.S.A. 2C:64-1 no longer limits forfeiture to a defendant's[1] interest in the property. It now reads: "Any interest in the following shall be subject to forfeiture...;" and the interdicted property is specified as it was before the amendment. N.J.S.A. 2C:64-5 now takes the following form:
No forfeiture under this chapter shall affect the rights of any lessor or any person holding a protected security interest in property subject to seizure unless it shall appear that such person had knowledge of or consented to any act or omission upon which the right of forfeiture is based....
Thus the amendment excised the exemption from forfeiture for an owner of property who had not consented and was not privy to the unlawful use of this property.
In reaching his result the trial judge applied the conventional logic which follows from the in rem nature of the forfeiture proceeding which "is considered as directed against the thing itself, not merely the possessor's interest in it." Spagnuolo v. Bonnet, 16 N.J. 546, 560 (1954). It is reasoned therefrom that the owner's innocence of wrongdoing is irrelevant. The notion first appeared in the biblical practice of the deodand by which the object, animate or inanimate, which had caused harm was "given to God" on the fiction that it had committed a wrong. In more recent times the result finds its justification in the desirable purpose of discouraging the careless lending of personal property which may thereafter be used to further an illicit purpose. For an historical review of forfeiture law see Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 reh'g den. 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974), and United States v. U.S. Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).
*584 Generally, forfeitures are disfavored in the law. State v. One (1) Ford Van Econoline, 154 N.J. Super. 326, 331-32 (App.Div. 1977), certif. den. 77 N.J. 474 (1978). As the Supreme Court said in Coin and Currency, supra, if it "were writing on a clean slate," where a Legislature fails to express an exemption for the property of innocent owners the Court would not "readily infer" that the Legislature intended a meaning other than that "the property shall be seized only if its owner significantly participated in the criminal enterprise...." 401 U.S. at 719, 91 S.Ct. at 1044. However, the court recognized that centuries of history support the claim that such statutes "have an extraordinarily broad scope." Ibid. Nevertheless, we have said that forfeiture statutes should be strictly construed "and in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation." State v. One (1) Ford Van Econoline, supra 154 N.J. Super. at 332 (quoting 37 C.J.S., Forfeitures § 4b).
Our treatment of the issue here presented will be guided by the expressions of the Supreme Court of the United States in Calero-Toledo v. Pearson Yacht Leasing Co., supra. That decision leaves no doubt that the forfeiture of property belonging to innocent owners does not in itself constitute the taking of property without just compensation. 416 U.S. at 680, 94 S.Ct. at 2090. But the language in the opinion's closing paragraphs at 416 U.S. 689-90, 94 S.Ct. at 2094-95 has been followed by numerous courts in relieving the harshness of forfeiture statutes in such circumstances. After noting that serious constitutional questions could arise from the "`broad sweep'" (416 U.S. at 688, 94 S.Ct. at 2094) of forfeiture statutes the Court alluded to an earlier intimation in Peisch v. Ware, 8 U.S. (4 Cranch) 347, 363, 2 L.Ed. 643 (1808) that forfeitures can be justified only where it lies within the power of the owner to prevent the abuse for which the forfeiture proceeding was begun. In the words of Chief Justice Marshall in that case, "a forfeiture can only be applied to those cases in which the means that are prescribed for *585 the prevention of a forfeiture may be employed." The Supreme Court then went on to state the following:
It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. See id., at 364, 2 L.Ed. 643; Goldsmith-Grant Co. v. United States, 254 U.S. [505], at 512 [41 S.Ct. 189 at 191], 65 L.Ed. 376; United States v. One Ford Coupe Automobile, 272 U.S. at 333 [47 S.Ct. 154 at 158], 71 L.Ed. 279, 47 A.L.R. 1025; Van Oster v. Kansas, supra [272 U.S. 465] at 467 [47 S.Ct. 133 at 134], 71 L.Ed. 354, 47 A.L.R. 1044. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive. Cf. Armstrong v. United States, 364 U.S. 40, 49, 4 L.Ed.2d 1554, 80 S.Ct. 1563 (1960). [416 U.S. at 690, 94 S.Ct. at 2094-95; footnote omitted]
In reversing the lower court's determination that the forfeiture statute was unconstitutional as to an innocent owner the Court acted on the ground that the owner had "voluntarily entrusted the lessees with possession of the yacht, and no allegation [had] been made or proof offered that the company did all that it reasonably could to avoid having its property put to an unlawful use." Ibid. Except for a dissenting opinion by Justice Douglas, who would have affirmed the judgment under review, the opinion of the Court was unanimous.
In United States v. One 1976 Lincoln Mark IV, 462 F. Supp. 1383 (W.D.Pa. 1979) the claimant loaned his automobile to his brother-in-law who was thereafter arrested while using the car in connection with a heroin sale. After carefully reviewing the history of forfeiture statutes and recent precedents the district court then undertook to apply the test enunciated in Calero-Toledo, supra. It was found that the owner was not implicated in the criminal events, and had no prior knowledge of the unlawful use of his car or that his brother-in-law was involved with drugs. Applying the test of whether the claimant "had done all that reasonably could be expected to prevent the proscribed use of his property," the court reasoned that the affirmative duty to prevent one's property from being used illegally could only be triggered by knowledge or suspicion of potential wrongdoing. *586 Thus, by tailoring the Calero-Toledo test to the individual circumstances of the case the district court concluded that the car could not be constitutionally forfeited. See also United States v. One 1974 Mercury Cougar XR-7, Etc., 397 F. Supp. 1325 (C.D.Cal. 1975); Cf. United States v. One 1971 Chevrolet Corvette, Etc., 393 F. Supp. 344 (E.D.Pa. 1975).
We recognize that in the cautious language of Calero-Toledo, supra, there is the flavor of dicta. But the determination that the forfeiture statute was there constitutionally applied is unmistakably bottomed upon the fact that the claimant neither alleged nor proved that it had done all it reasonably could to avoid having its property put to an unlawful use, suggesting that this criterion was proffered as something more than dicta. Regardless, it is now uniformly applied in any analysis of the federal constitutional question presented and it is undoubtedly the law of the land. See, e.g., United States v. One 1977 Mercedes Benz, 708 F.2d 444 (9 Cir.1983); United States v. One Tintoretto Painting, Etc., 691 F.2d 603 (2 Cir.1982); United States v. One 1951 Douglas DC-6 Aircraft, 667 F.2d 502 (6 Cir.1981), cert. den. ___ U.S. ___, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983); United States v. One 1957 Rockwell Aero Com., Etc., 671 F.2d 414 (10 Cir.1982); United States v. One 1977 Cherokee Jeep, Vin J7A17MP116712, 639 F.2d 212 (5 Cir.1981); United States v. One 1975 Pontiac Lemans, Etc., 621 F.2d 444 (1 Cir.1980); U.S. v. Six Thousand Seven Hundred Dollars, 615 F.2d 1 (1 Cir.1980); United States v. One 1976 Porsche, 911S, Etc., 670 F.2d 810 (9 Cir.1979); U.S. v. One 1972 Chevrolet Blazer, Etc., 563 F.2d 1386 (9 Cir.1977); United States v. One 1973 Buick Riviera Auto., 560 F.2d 897 (8 Cir.1977); United States v. One 1975 Ford Pickup Truck, Etc., 558 F.2d 755 (5 Cir.1977); United States v. One 1972 Mercedes Benz 250, Etc., 545 F.2d 1233 (9 Cir.1976); United States v. One Datsun 280 ZX, 563 F. Supp. 470 (E.D.Pa. 1983); United States v. One 1976 Chevrolet Corvette, 477 F. Supp. 32 (E.D.Pa. 1979); United States v. Four (4) Pinball Machines, 429 F. Supp. 1002 (D.Hawaii 1977).
*587 It is within our authority to repair a constitutionally doubtful statute by judicial interpretation. Town Tobacconist v. Kimmelman, 94 N.J. 85, 104 (1983); State v. DeSantis, 65 N.J. 462, 472-73 (1974). Indeed, "... a statute should be construed so as to avoid unconstitutionality whenever possible." Schulman v. Kelly, 54 N.J. 364, 370 (1969).
In the case before us the Calero-Toledo limitation can be read into our forfeiture statute without any departure from our understanding of the legislative intent. Although the 1981 amendment eliminated the exemption for innocent owners it is not altogether clear that the law makers intended that the penalty should be inflexibly applied in all cases. If read literally the statute's reach is of intolerable scope, encompassing not only the property of common carriers but even property stolen from innocent owners and thereafter used unlawfully. It would even appear to require the forfeiture of a private residence which is maintained for unlawful purposes during its innocent owner's temporary absence, whether voluntary or involuntary. Some exceptions were clearly intended. N.J.S.A. 2C:64-2, also amended in 1981, for example, provides that prima facie contraband[2] shall be forfeited "subject to the rights of owners and others holding interests pursuant to section 2C:64-5." (Emphasis supplied). Section 2C:64-5 as we earlier noted, is that section of the Act from which the exemption for innocent owners was removed by the 1981 amendment. Also, N.J.S.A. 2C:64-8 allows one who could not with due diligence have discovered that his property was seized as contraband[3] up to three years to file a claim for *588 its return of the value thereof "if he can demonstrate that he did not consent to, and had no knowledge of its unlawful use."
There is no sensible relationship between § 64-2 which recognizes the "rights of owners" in forfeited prima facie contraband, § 64-8 which allows an owner to recover his forfeited property or recover the value thereof if he had no knowledge of its unlawful use, and some supposed intent on the part of the Legislature to decree forfeiture in all other cases regardless of the owner's lack of connection with or knowledge of the unlawful use.
In Town Tobacconist v. Kimmelman, supra, 94 N.J. at 127, n. 22 it was noted that the operation of a head shop may subject any drug paraphernalia found therein to seizure as contraband in accordance with the Forfeiture Act. A "head shop" is a place where paraphernalia proscribed by the Drug Paraphernalia Act, N.J.S.A. 24:21-46, are offered for sale. A violation of that statute occurs where the operator of the shop is shown to have been "practically certain," Id. at 112, 117, 122, that the purchaser will use the purchased goods illegally with a controlled dangerous substance in violation of the Controlled Dangerous Substances Act, N.J.S.A. 24:21-1 et seq. While the Supreme Court's pointed allusion to the Forfeiture Act in Town Tobacconist may not be evidence of legislative intent in this case, it is nevertheless noteworthy for two reasons: one is that it expresses the Supreme Court's intent that drug paraphernalia may be forfeited only where the seller's guilty knowledge has been proved; the other is that the requirement that the head shop operator be "practically certain" of the unlawful use to which the article will be put was one which was read into the Drug Paraphernalia Act by the Supreme Court to salvage its constitutionality. Id. at 115, 119.
The only evidence cited in support of a legislative intent to forfeit the property of innocent owners in all cases is the fact that the express exemption for this class was excised by the 1981 amendment. What the argument overlooks is the fact that the *589 excised exemption went far beyond what is constitutionally required in Calero-Toledo. It conditioned seizure upon a showing that the property owner or his agent "was a consenting party or privy to its unlawful possession, use or sale...." Calero-Toledo imposes no such limitation. It permits the property of an innocent owner to be forfeited, subject only to the defense that he did all that reasonably could be expected to prevent the unlawful use of his property.
Although it is a risky business to speculate about the motivation for the 1981 amendment, the evidence before us at least reasonably suggests that it was sponsored by an intent to capitalize on the opportunity accorded by the Supreme Court of the United States for extending the State's forfeiture powers beyond the property of owners who consent to or participate in the unlawful use of their property to whatever is allowed by the demands of due process. In so doing the Legislature left the question as to when property which is merely "subject to" forfeiture may actually be taken by enforcement proceedings as one to be decided on the constitutionally material parts of each given case.
We discern no conflict between our holding and that in State v. One (1971) Datsun, supra. The only contentions before that court were that the forfeiture statute, N.J.S.A. 2C:64-1 et seq. was facially invalid because of overbreadth and that it should be read "to prohibit forfeiture `when the property is used in the commission of a criminal offense without the owner's knowledge.'" Id. 189 N.J. Super. at 210. That court held only that the statute was not facially unconstitutional as applied to an innocent owner. Not presented for consideration in Datsun was the "reasonable expectation" defense criterion enunciated in Calero-Toledo which has been followed in a long succession of decided cases and upon which we rest our determination.
Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Presumably the "defendant" contemplated is the one who was the subject of criminal prosecution.
[2] Controlled dangerous substances, firearms which are unlawfully possessed, carried, acquired or used, illegally possessed gambling devices and untaxed cigarettes. N.J.S.A. 2C:64-1 a(1).
[3] By "contraband" what is evidently meant is "any property other than prima facie contraband" but which is subject, as in this case, to the forfeiture procedures of N.J.S.A. 2C:64-3. To support the forfeiture the article of property must be shown to be contraband. N.J.S.A. 2C:64-3. Obviously, this includes "conveyances," included in N.J.S.A. 2C:64-1.